**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION**

| | |
|---|---|
| YVES WANTOU, §<br>§<br>Plaintiff, §<br>§<br>v. §<br>§<br>WAL-MART STORES TEXAS, LLC, §<br>§<br>Defendant. §<br>§ | CIVIL ACTION NO. 5:17-CV-00018-RWS-CMC |

**ORDER**

Before the Court are the parties' second round of post-trial motions. Docket Nos. 637, 638, 640, 641, 644, 653 and 665. For the following reasons,

- Walmart's Motion to Alter Judgment (Docket No. 637) is **DENIED**;

- Walmart's Renewed Motion for Judgment as a Matter of Law (Docket No. 638) is **DENIED**;

- Wantou's Motion to Alter Judgment (Docket No. 640) is **DENIED-IN-PART** and **GRANTED-IN-PART**;

- Wantou's Motion for Leave to File a Corrected Rule 59 Motion (Docket No. 665) is **DENIED-AS-MOOT**;

- Wantou's Renewed Motion for Judgment as a Matter of Law (Docket Nos. 641, 644) is **DENIED**; and

- Wantou's Motion for Attorneys' Fees (Docket No. 653) is **DENIED-IN-PART** and **GRANTED-IN-PART**.

## I. Background

Yves Wantou sued Walmart Stores Texas, LLC under Title VII of the Civil Rights Act of 1964. He claimed Walmart, through its employees, discriminated and retaliated against him by issuing him three "coachings," a formal workplace disciplinary practice (a.k.a. the First Written

Coaching, Second Written Coaching and Third Written Coaching); threatening to demote him; and terminating him. After much motion practice, Walmart moved for summary judgment. Docket No. 209. The Court granted summary judgment in part, dismissing Wantou's discrimination claims but allowing his retaliation claims to proceed. Docket No. 490.

In October 2019, the parties tried the remaining claims. The Court empaneled a jury, which was advisory as to back and front pay, and the jury rendered a verdict. It found Walmart retaliated against Wantou by issuing his Third Written Coaching, awarded Wantou $75,000 in punitive damages and recommended awarding $32,240 in back pay. The jury found no other conduct retaliatory and did not award any other damages.

After trial, the Court denied the parties' requests for judgment as a matter of law, denied the parties' requests for a new trial, denied Walmart's request for remittitur, awarded Wantou limited equitable relief and entered judgment. Docket No. 631 (Order on Post-Trial Motions); Docket No. 632 (Final Judgment). Just before entering judgment, the Court made clear that "neither party [would] be permitted to file a post-trial motion or brief that raises issues that could have been raised during the ordinary course of the now-expired post-trial briefing schedule." Docket No. 630. A few weeks later, the parties filed various post-trial motions.

## II. Legal Standards

### a. Rule 50(b): Judgment as a Matter of Law

Judgment as a matter of law ("JMOL") is only appropriate when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." FED. R. CIV. P. 50(a). A court is to be "especially deferential" to a jury's verdict and must not reverse the jury's findings unless they are not supported by substantial evidence. *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 499 (5th Cir. 2012). "Substantial evidence is defined as evidence of such quality

and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Threlkeld v. Total Petroleum, Inc.*, 211 F.3d 887, 891 (5th Cir. 2000). The Court will "uphold a jury verdict unless the facts and inferences point so strongly and so overwhelmingly in favor of one party that reasonable men could not arrive at any verdict to the contrary." *Cousin v. Trans Union Corp.*, 246 F.3d 359, 366 (5th Cir. 2001); *see also Int'l Ins. Co. v. RSR Corp.*, 426 F.3d 281, 296 (5th Cir. 2005). However, "[t]here must be more than a mere scintilla of evidence in the record to prevent judgment as a matter of law in favor of the movant." *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 606 (5th Cir. 2007).

In evaluating a motion for judgment as a matter of law, a court must "draw all reasonable inferences in the light most favorable to the verdict and cannot substitute other inferences that [the court] might regard as more reasonable." *E.E.O.C. v. Boh Bros. Const. Co., L.L.C.*, 731 F.3d 444, 451 (5th Cir. 2013). Although a court must review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. *Ellis v. Weasler Eng'g Inc.*, 258 F.3d 326, 337 (5th Cir. 2001). A court may not make credibility determinations or weigh the evidence, as those are functions of the jury. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000). Likewise, a court must give "credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Arismendez*, 493 F.3d at 606.

### b. Rule 59: Motion to Alter Judgment

"A Rule 59(e) motion is a motion that calls into question the correctness of a judgment." *In re Transtexas Gas Corp. v. TransTexas Gas*, 303 F.3d 571, 581 (5th Cir. 2002). "[S]uch a motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). Instead, Rule 59(e) motions "serve the narrow purpose of allowing a

party to correct manifest errors of law or fact or to present newly discovered evidence." *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989).

### c. 42 U.S.C. § 1988: Attorneys' Fees

"In any action or proceeding to enforce a provision of [42 U.S.C. §] 1981 [or] title VII of the Civil Rights Act of 1964 . . . , the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. But "the intent of Congress in enacting section 1988 would be seriously undermined if [courts] allowed *pro se* litigants to recover legal fees under that section," so such awards are forbidden. *Cofield v. Atlanta*, 648 F.2d 986, 987 (5th Cir. 1981).

"In this circuit, courts apply a two-step method for determining a reasonable attorney's fee award." *Combs v. City of Huntington*, 829 F.3d 388, 391 (5th Cir. 2016). "[F]irst," they "calculate the lodestar, which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work." *Id*. Then, "the court may enhance or decrease it based on the twelve Johnson factors." *Id.* Those factors include:

(1) the time and labor required; . . .

(2) the novelty and difficulty of the questions; . . .

(3) the skill requisite to perform the legal service properly; . . .

(4) the preclusion of other employment by the attorney due to acceptance of the case; . . .

(5) the customary fee; . . .

(6) whether the fee is fixed or contingent; . . .

(7) time limitations imposed by the client or the circumstances; . . .

(8) the amount involved and the results obtained; . . .

(9) the experience, reputation, and ability of the attorneys; . . .

(10) the "undesirability" of the case; . . .

> (11) the nature and length of the professional relationship with the client; . . . and
>
> (12) awards in similar cases[.]

*Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). Ultimately, "the court must provide a reasonably specific explanation for all aspects of [its] fee determination." *Combs*, 829 F.3d at 392.

### III. Discussion

#### a. Walmart's Motion to Alter or Amend Judgment (Docket No. 637)

Walmart makes three allegations: (1) there is no evidence that the Third Written Coaching was retaliatory; (2) the award of punitive damages is legally insupportable; and (3) the award of backpay is legally insupportable. Docket No. 637. But no allegation is persuasive.

The first two allegations predominately "rehash[] . . . arguments that could have been offered or raised before the entry of judgment," *Templet*, 367 F.3d at 479, but they do raise a few novel points. With respect to retaliation, Walmart claims "PX13.2 is no evidence that [Katy] Leeves was aware of Wantou's Global Ethics Complaints." To be sure, Leeves may have only mentioned Wantou's 50-minute phone call, but it would be reasonable for the jury to conclude Wantou responded by explaining the content of the call, just like he did in PX13—a grievance in its own right. In any event, the jury's verdict is independently sustainable based on an unobjected-to jury instruction, which Walmart does not address. *See* Docket No. 631 at 27. With respect to punitive damages, Walmart makes new arguments based on the reduced backpay award, but it fails to address the Court's reasoning—which was award-independent. *See* Docket No. 631 at 31–32 (citing *Abner v. Kan. City S. R.R. Co.*, 513 F.3d 154, 164 (5th Cir. 2008)). The amount of backpay awarded has no effect on the Court's punitive damages decision.

Though Walmart's third allegation is novel, as the Court's judgment finalized the backpay award, it is similarly unpersuasive. *See* Docket No. 637 at 1–3. Wantou sought relief for his unpaid leave of absence. His Third Amended Complaint (Docket No. 47) alleges he "lost income by taking a leave of absence due to the emotional distress he suffered as a result of the harassment and hostile work environment to which he was subjected." Though inartful, given Wantou's *pro se* status, this requested both lost income—*i.e.*, backpay—and emotional distress damages—compensatory damages. *See Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 164 (1984) ("[P]ro se pleadings are to be given a liberal construction."). And Wantou's compensation during his leave of absence was mentioned at trial, Docket No. 592 at 313; mentioned in post-trial briefing, Docket No. 609 at 35; and argued during the post-trial motions hearing, Docket No. 622 at 23–24, 49. Indeed, such relief is consistent with Wantou's trial testimony. Docket No. 592 at 313. Wantou testified that he requested reinstatement of PTO erroneously used to cover his unpaid absence, but he never testified that he was both paid for his absence and his full PTO balance. *Id.* In fact, Wantou stated that he "wanted those [PTO hours] taken back," not paid twice. *Id.* at 313:12. Finally, Walmart's reliance on DX 8 is misplaced. If anything, it supports the Court's approximation of one-week's pay. Wantou's total compensation for the pay period before his leave was $11,749.40, and his pay for the pay period containing his leave was $5,990.79—a difference of $5,789. Likewise, his total compensation for the weeks following his absence was $9,367.88—a difference of $3,377.09. Thus, $5,177.50 was a reasonable approximation of one-week's pay. *See* Docket No. 631 at 32; *cf. Giles v. GE*, 245 F.3d 474, 492 (5th Cir. 2001) ("[B]ack pay is an equitable remedy, the award of which we review for abuse of discretion.").

Therefore, Walmart's Motion to Alter Judgment (Docket No. 637) is **DENIED**.

### b. Walmart's Renewed Motion for Judgment as a Matter of Law (Docket No. 638)

In its renewed JMOL motion, Walmart rehashes arguments raised in its Motion to Alter Judgment. For the reasons mentioned above, Walmart's renewed motion (Docket No. 638) is **DENIED**.

### c. Wantou's Motion to Alter or Amend Judgment (Docket No. 640)

Wantou contends the Court should amend its judgment for at least 15 reasons: (1) Walmart did not meet its burden of production on various issues; (2) the Court's backpay award fails to make Wantou whole; (3) the Court misconstrued Wantou's testimony; (4) the Court's denial of the Cat's Paw instruction was manifest error; (5) the Court should have provided the jury with certain deposition transcripts; (6) the Court improperly limited certain exhibits; (7) the Court improperly allowed false allegations in closing; (8) the Court permitted Walmart to willfully violate its order on motions *in limine*; (9) the Court's exclusion of certain witnesses was manifest error; (10) the Court must amend its judgment on threats of demotion; (11) the Court must amend its judgment as to *quantum meruit*; (12) the jury's denial of compensatory damages was manifestly erroneous; (13) the Court's exclusion of Wantou's expert witness was manifest error; (14) the jury's non-retaliation verdicts were against the manifest weight of evidence and (15) the Court's summary judgment decisions were incorrect. Docket No. 640. He also requests pre- and post-judgment interest. *Id.* at 25

For the various assertions of error, Wantou largely "rehashes . . . arguments that could have been offered or raised before the entry of judgment," *Templet*, 367 F.3d at 479. Ground (2), challenging the backpay award, is a partial exception. There, Wantou claims the Court's award of $5,177.50 neither accounts for the fact his Third Written Coaching caused his termination nor compensates him fully for a week's pay. The first argument rehashes old positions, and the second is unpersuasive. As discussed above, *supra* § III(a), $5,177.50 is a reasonable estimate of

Wantou's pay for one week. In fact, Wantou himself testified his "total pay was about $210,000 a year because that included the extra shifts and everything," which equates to $4,200 per week with two-weeks' vacation. Docket No. 592 at 217:14–15. In other arguments, Wantou challenges the Court's reading of the testimony, the evidence and the law, but he does not show manifest error warranting amendment of judgment. On these grounds, Wantou's motion is **DENIED**.

For pre- and post-judgment interest, Wantou requests the Court award interest, but does not propose a rate. Docket No 640 at 25. Though Walmart does not contest Wantou's entitlement to such interest generally, it does argue pre-judgment interest is unavailable for punitive damages. Docket No. 648 at 11–12. Moreover, Walmart proposes a post-judgment interest rate of 0.39 percent per year and a pre-judgment interest rate of 5 percent per year. *Id.* at 12. In reply, Wantou argues pre-judgment interest is available for punitive damages, challenges Walmart's post-judgment interest rate and challenges Walmart's proposed date of judgment. Docket No. 655.

Pre-judgment interest is aimed at compensating the plaintiff, *i.e.*, making them whole. *City of Milwaukee v. Cement Div., Nat'l Gypsum Co.*, 515 U.S. 189, 196 (1995) ("The essential rationale for awarding prejudgment interest is to ensure that an injured party is fully compensated for its loss."). But punitive damages are non-compensatory, so there is no justification for applying pre-judgment interest to those awards. *See, e.g.*, *Scott v. Amarillo Heart Grp., LLP*, No. 2:12-CV-112-J, 2013 U.S. Dist. LEXIS 51461, at *12 (N.D. Tex. Apr. 10, 2013); *Gilster v. Primebank*, 884 F. Supp. 2d 811, 884 (N.D. Iowa 2012), *rev'd on other grounds*, 747 F.3d 1007 (8th Cir. 2014). Thus, pre-judgment interest will be **GRANTED** on Wantou's backpay award only.

In passing, Wantou challenges Walmart's proposed post-judgment interest rate but does not offer an alternative. Post-judgment interest is calculated at the federal rate, regardless of the underlying claims. *See Boston Old Colony Ins. Co. v. Tiner Assocs., Inc.*, 288 F.3d 222, 234 (5th

Cir. 2002). Under 28 U.S.C. § 1961(a), the appropriate rate is "equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." For civil judgments entered between March 9 and March 17, 2020, the post-judgment interest rate is 0.62 percent. Thus, the Court hereby **SETS** the pre-judgment interest rate at 5 percent per year and the post-judgment interest rate at 0.62 percent per year, compounded annually.

  d.  **Wantou's Motion for leave to File Corrected Rule 59 Motion (Docket No. 665)**

Because the Court has resolved Wantou's Rule 59 motion, his request for leave to file a corrected motion (Docket No. 665), which only makes minor, typographical corrections, is **DENIED-AS-MOOT**.

  e.  **Wantou's Renewed Motion for Judgment as a Matter of Law (Docket Nos. 641, 644)**

In his renewed JMOL motion, Wantou rehashes arguments raised in his pre-judgment briefing. For the reasons stated in the Court's prior order (Docket No. 631), Wantou's renewed motion (Docket No. 649) is **DENIED**.

  f.  **Wantou's Motion for Attorneys' Fees and Non-Taxable Costs (Docket No. 653)**

Wantou requests attorneys' fees and non-taxable costs under 28 U.S.C. § 1988(b). Docket No. 653. Walmart objects, disputing all four categories of Wantou's request: (1) non-taxable costs and expert fees incurred during Wantou's *pro se* period; (2) Jana Yocom Rine's fees; (3) Ronald Dupree's consultation fee; and (4) Michael Latimer's fees.[1]  *See* Docket No. 658; *see also* Docket No. 663 (opposing Wantou's motion for leave to file in excess because, allegedly, Wantou raised new arguments and provided new evidence in reply). The Court takes each category in turn.

---

[1] Walmart does not contest Wantou's status as the "prevailing party," and by acknowledging he is entitled to some fees, concedes the point. Accordingly, the Court finds Wantou to be the prevailing party under § 1988.

1. Non-Taxable Costs and Expert Fees for *Pro Se* Litigants

Wantou's request for non-taxable costs and expert fees under § 1988 raises a question of first impression—albeit a narrow one—born from the interaction between two bodies of Fifth Circuit law. In separate cases, the Fifth Circuit has held that *pro se* litigants cannot recover legal fees under § 1988, *Cofield*, 648 F.2d at 987, and that "[a]ll reasonable out-of-pocket expenses. . . are plainly recoverable in [§] 1988 fee awards," *Associated Builders & Contractors, Inc. v. Orleans Par. Sch. Bd.*, 919 F.2d 374, 380 (5th Cir. 1990). The question, then, is whether out-of-pocket expenses are "legal fees" barred to *pro se* litigants under *Cofield*.

Based on the Fifth Circuit's reasoning, out-of-pocket expenses are "legal fees" forbidden to *pro se* litigants under *Cofield*. Those expenses are available under § 1988 precisely "because they are part of the costs normally charged to a fee-paying client." *Associated Builders & Contractors, Inc.*, 919 F.2d at 380. They are not a separate category of "costs" but a subset of "attorneys' fees" in the same way paralegal fees are a subset of attorneys' fees. *See Missouri v. Jenkins*, 491 U.S. 274, 285 (1989). Wantou raises a distinction without a difference, and *Cofield* bars recovery of Wantou's out-of-pocket expenses. So those out-of-pocket expenses are **DENIED**. By agreement of the parties, however, Wantou's request for $71.50 for his hotel stay for the deposition of Evelyn Kim is **GRANTED**.

2. Jana Yocom Rine's Fees

Initially, Wantou requested $93,859.80 in attorneys' fees billed by Rine during her four-month representation of Wantou. Docket No 653 at 1. In response, Walmart claimed Wantou failed to sufficiently support his request because he neither proved Rine's qualifications nor provided her billing records. Docket No. 658. Walmart further argued Wantou's requested amount of fees was "patently excessive." Docket No. 658 at 3. Wantou, replying to Walmart's

objections, attached Rine's biographical information, provided Rine's billing records and nearly doubled his fees request to $184,000—or 368 hours at $500 per hour.

To the extent Walmart properly objected to Wantou's evidence raised in reply, *see* Docket No. 663, those objections are **OVERRULED**.[2]  Rather than raise new arguments, Wantou presented additional evidence in response to Walmart's opposition. *Cf. McCue v. S. Fork Union Sch. Dist.*, No. CV-F-10-233, 2010 U.S. Dist. LEXIS 50432, at *35 (E.D. Cal. May 20, 2010) ("[T]he Court has discretion to consider arguments made in response to an opposition brief."). Walmart had an opportunity to challenge Wantou's new evidence but chose not to do so. Local Rule CV-7(a) (permitting sur-reply briefs). Ignoring Wantou's evidence now would be unjust, denying him fees aimed at encouraging representation in civil rights cases based on a technicality. *See Jackson v. United States Postal Serv.*, 666 F.2d 258, 260–61 (5th Cir. 1982) ("An appellate court does not give consideration to issues not raised below, except in exceptional cases to prevent an injustice."). Combined, all of these factors militate toward considering Wantou's evidence included in reply.

Wantou's lodestar calculation, however, is unreasonably high. **First**, a rate of $350—not $500—is reasonable for Rine's services. Though not controlling, that is the rate Rine charged Wantou at the outset of her representation. Negotiated at arm's length, Rine's actual rate is at least some evidence of what the market will bear. *Cf. La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995) (holding that, when an attorney requests a lodestar calculation at their normal billing rate, it is *prima facie* reasonable). Moreover, presuming home rates control,[3] Rine has been

---

[2] Walmart cites the Court's prior order, finding Walmart waived its *BMW* arguments. But the Court considered and rejected Walmart's argument on the merits. Docket No. 631 at 31–32.

[3] Only in "unusual cases" are "out-of-district counsel . . . necessary to secure adequate representation for a civil rights plaintiff." *McClain v. Lufkin Indus.,* 649 F.3d 374, 383 (5th Cir. 2011).

admitted to practice in the Northern District of Texas; the Northern, Central and Southern Districts of Illinois; and the Eastern District of Michigan. In the recent past, courts in those jurisdictions awarded comparable rates to attorneys with similar experience. *See, e.g.*, *Stevenson v. Lasalle Corr. Transp., LLC*, Civil Action No. 3:13-CV-2105-N, 2015 U.S. Dist. LEXIS 179780, at *4 (N.D. Tex. Apr. 21, 2015) (approving $300 per hour rate in Title VII/ADEA case); *Barbee v. Christy-Foltz, Inc.*, No. 09-2056, 2011 U.S. Dist. LEXIS 7614, at *6 (C.D. Ill. Jan. 26, 2011) (approving $350 lead-counsel rate in Title VII case). Similar rates have been approved in this district. *Giesler v. Ruiz Food Products, Inc.,* No. 4:08-cv-377, Docket No. 88 (E.D. Tex. Mar. 2, 2010) (finding $350 per hour a reasonable hourly rate for a Title VII employment case); *cf. Whatley v. Creditwach Services, Ltd.*, No. 4:11-cv-493, 2014 WL 1287131, at *4 (E.D. Tex. Mar. 31, 2014) (finding $232.79 to be a reasonable average rate for consumer law attorneys in this region).

Wantou's cited authority is inapposite. Each case was far more complex than this matter: *Erica P. John Fund, Inc. v. Halliburton Co.*, No. 3:02-cv-1152-M, 2018 U.S. Dist. LEXIS 69143, at *8 (N.D. Tex. Apr. 25, 2018), was a securities class action case; *Hoffman v. L&M Arts*, No. 3:10-CV-0953-D, 2015 U.S. Dist. LEXIS 85882, at *2 (N.D. Tex. July 1, 2015), involved a discovery dispute in a complex contract dispute that was "the subject of several . . . opinions" before the fees issue ripened, *see, e.g., Hoffman v. L&M Arts*, No. 3:10-CV-0953-D, 2014 U.S. Dist. LEXIS 123119, at *3–4 (N.D. Tex. Sep. 4, 2014); and *CEATS, Inc. v. TicketNetwork, Inc.*, No. 2:15-CV-01470-JRG, 2019 U.S. Dist. LEXIS 70353, at *2 (E.D. Tex. Apr. 25, 2019), was a multi-defendant, multi-claim patent suit.

**Second**, the number of hours Rine billed—368—was excessive. After considering billing records, the Court should "exclude any time that is excessive, duplicative, unnecessary, or inadequately documented." *Neal Techs., Inc. v. Unique Motorsports, Inc.*, Civil Action No. 4:15-

CV-00385, 2018 U.S. Dist. LEXIS 128129, at *13 (E.D. Tex. July 31, 2018). Transitions in counsel—or from *pro se* status—can cause duplicative or unnecessary work. *Cf. Paris v. Dall. Airmotive*, No. 3:97-CV-0208-L, 2004 U.S. Dist. LEXIS 18893, at *15 (N.D. Tex. Sep. 21, 2004) ("That a litigant changes attorneys and new counsel must become familiar with the case cannot be a basis for a litigant to recover for those fees each time new counsel undertakes such a review."). Rine appeared on Wantou's behalf after trial and spent significant time getting up to speed. Likewise, Rine was required to review drafts Wantou created and, in her own words, "answer[] numerous emails" from Wantou. Docket No. 624 at 4 (Rine's Motion to Withdraw). This was needless, excessive work. *See, e.g.*, Docket No. 661-6 at 3 ("Review JMOL prepared by client . . . . [R]eview client's proposed JMOL"), 6 ("[R]eview client email . . . review email from client . . . review emails from client."). The Court has closely reviewed Rine's records, and based on this Court's experience, Rine's billed hours will be reduced by 15 percent to account for excessive labor.

**Third**, it was unreasonable for Rine to complete every billable task without the assistance of lower-valued staff (*e.g.*, clerical staff or associates). Certain tasks were clerical. *See, e.g.*, Docket No. 661-6 at 5 ("Review and organize record."), 12 ("Search for and download sample brief for form."), 16 ("[P]rint cases cited in Walmart's response to prepare to draft Reply to Walmart's Response."). And a reasonable distribution of labor would have allocation five percent of Rine's billed hours to clerical staff, which should not have been charged to Wantou. *Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*, Civil Action No. 4:14-CV-00371, 2018 U.S. Dist. LEXIS 56478, at *16 (E.D. Tex. Apr. 3, 2018) (subtracting "the amount billed for clerical work . . . when calculating the reasonable attorneys' fees"). Likewise, certain tasks involved simple legal research or other basic legal tasks. *See, e.g.*, *id.* at 2 ("[R]esearch re JMOL. Not

typical for plaintiff. Usually raised prior to defendant's case. Send example to client . . . . [R]esearch re JMOL as plaintiff."), 3 ("[R]esearch elements of retaliation and email re same to client re procedure."), 6 ("[R]esearch re employment law damages and procedure to overturn jury award. Concentration on back pay and equitable remedy."). For those hours, a lower billable rate is appropriate—for example, a junior associate billable rate.[4] Approximately 60 percent of Rine's billed hours related to associate-level tasks. *See* Docket No. 661-6; *cf. Ingram v. World Sec. Bureau, Inc.*, No. 11-C-6566, 2013 U.S. Dist. LEXIS 177072, at *19 (N.D. Ill. Dec. 17, 2013) (imposing 60-40 ratio for associate to partner hours, respectively, in Fair Labor Standards Act case). For those hours, the Court will apply a $150 hourly rate, which is consistent with rates from other cases. *Kelmendi v. Detroit Bd. of Educ.*, No. 12-14949, 2017 U.S. Dist. LEXIS 63652, at *60 (E.D. Mich. Apr. 27, 2017) (applying State Bar of Michigan's Economics of Law Practice Survey and approving $150 per hour for junior associate in Title VII case); *Alcazar-Anselmo v. City of Chi.*, No. 07-C-5246, 2011 U.S. Dist. LEXIS 82291, at *22 (N.D. Ill. July 27, 2011) (applying $150 rate for junior associate in Family Medical Leave Act case); *Baki v. Bigelow Mgmt.*, No. 4:04-CV-178, 2006 U.S. Dist. LEXIS 115965, at *6 (E.D. Tex. Mar. 24, 2006) (approving $150 per hour for a mid-level associate in Title VII case).

The *Johnson* factors do not support adjusting the lodestar calculation. *Johnson*, 488 F.2d at 717–19. "Four of the *Johnson* factors—(2) the novelty and complexity of the issues, (3) the special skill and experience of counsel, (9) the quality of representation, and (8) the results obtained from the litigation—are presumably fully reflected in the lodestar amount." *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993). And nothing rebuts that presumption here; indeed, the issues involved, the quality of representation and the results obtained were all

---

[4] Given the success of Wantou's positions and, thus, the effectiveness of Rine's research, a junior associate rate is appropriate.

considered above. Likewise, four additional factors are subsumed in the lodestar: (1) the time and labor required (through the hours billed), (4) the loss of other employment (again, through the hours billed), (5) the customary fee (through Rine's actual, negotiated fee) and (12) awards in similar cases. Finally, the remaining factors do not justify departure from the lodestar amount. Factor (6) may not be used to enhance fees, so it is inapplicable. *Walker v. United States HUD*, 99 F.3d 761, 772 (5th Cir. 1996). To be sure, Factors (7) and (10) would support a slight enhancement because Rine was retained for post-trial briefing—which creates time pressure—and Wantou sued to protect his civil rights—making the case somewhat undesirable. But neither justifies departure. Enhancement is available "only in exceptional cases," and based on the Court's experience, this case is not exceptional. *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).

Therefore, Wantou's request for Rine's fees is **DENIED-IN-PART** and **GRANTED-IN-PART**. He shall be awarded $68,346.80 calculated as follows:

| CATEGORY | RATE (PER HOUR) | HOURS | DOLLARS |
|---|---|---|---|
| Full Rate | $350 | 118.86 (40% of attorney hours) | $41,602.40 |
| Associate Rate | $150 | 178.30 (60% of attorney hours) | $26,744.40 |
| Clerical Reduction | $0 | 15.64 (5% of reduced hours) | $0 |
| Total | -- | 312.8 (reduced 15%) | $68,346.80 |

3. Ronald Dupree's Consultation Fee

Wantou requested $250 in fees for Ronald Dupree's initial consultation on the case. Docket No. 652 at 1. Walmart objects for two reasons: (1) Wantou failed to provide any biographical information for Mr. Dupree and (2) Wantou failed to show such consultation fees are recoverable. Docket No. 658 at 3–4.

Wantou cannot recover Dupree's consultation fee. As above, the Court will consider Wantou's evidence provided in reply. But, based on that evidence, Dupree never "engaged in any investigation or legal research on [Wantou's] behalf." Docket No. 661-7 at 2. He never represented Wantou, so the $250 consultation fee was nothing more than administrative. *See id.* The fee was neither a legal fee nor an out-of-pocket expense incurred by a retained lawyer, so it is not recoverable.

Therefore, Wantou's request for Dupree's consultation fee is **DENIED**.

4. Michael Latimer's Fees

Initially, Wantou sought $50,325 in fees for Latimer's work. Docket No. 653 at 1. Like before, Walmart objected to a portion of that request, claiming Wantou only provided billing records for $48,895 in legal fees. Docket No. 658 at 5. Going further, Walmart argued Latimer's fees were excessive because Wantou only recovered a fraction of his requested damages and because 5 percent of Latimer's work was clerical. *Id.* at 6. In reply, once again, Wantou nearly doubled his fee request to $94,945—or 181.5 attorney hours at $450 and 132.7 paralegal hours at $100 per hour.

Again, Wantou's lodestar calculation is unreasonably high. **First,** a rate of $250—not $500—is reasonable for Latimer's services. Latimer billed Wantou at $250 per hour, and though not controlling, that suggests $450 per hour is excessive. *Cf. La. Power & Light Co.*, 50 F.3d at 328 (holding that, when an attorney requests a lodestar calculation at their normal billing rate, it is *prima facie* reasonable). And Latimer was only involved during a relatively straightforward portion of the case—responding to a motion to dismiss and conducting discovery—which suggests $450 per hour is excessive. Most importantly, assuming a home-district rate applies, attorneys in the Western District of Texas with similar experience charge rates similar to $250 per hour. *See,*

*e.g.*, *Saldivar v. Rodela*, 894 F. Supp. 2d 916, 934–35 (W.D. Tex. 2012) (approving $250 per hour rate and finding the "median hourly rate for an El Paso attorney with over twenty-five years of experience is $233"); *Black v. Pan Am. Labs., LLC*, No. A-07-CV-924-LY, 2012 U.S. Dist. LEXIS 199488, at *16 (W.D. Tex. Feb. 15, 2012) (According to *Texas Lawyer* article, "equity partners in Austin law firms billed at an hourly rate of $315–$372 per hour for 2010."). And as noted above, similar rates have been approved in this district. *Giesler,* No. 4:08-cv-377, 2010 U.S. Dist. LEXIS 18141 (E.D. Tex. Mar. 2, 2010). Based on the Court's experience, a $250-per-hour rate is reasonable.

Again, Wantou's cited authority is unpersuasive. Unlike the attorneys in *Chacon v. City of Austin*, No. A-12-CA-226-SS, 2015 U.S. Dist. LEXIS 88354, at *18 (W.D. Tex. July 8, 2015), and *Meesook v. Grey Canyon Family Med., P.A.*, No. 5:13-cv-729-XR, 2014 U.S. Dist. LEXIS 143081, at *6 (W.D. Tex. Oct. 8, 2014), Latimer was only involved during a relatively straightforward portion of the case: discovery.

**Second,** a rate of $50 per hour—not $100—is reasonable for paralegal services. Latimer charged between $10 and $40 per hour for his paralegals, which suggests $100 per hour is excessive. *Cf. La. Power & Light Co.*, 50 F.3d 319 at 328 (holding that, when an attorney requests a lodestar calculation at their normally billing rate, it is *prima facie* reasonable). And some of the paralegals' work was organizational. *See, e.g.*, Docket No. 653-3 at 9 ("Paralegal scanned documents per exam categories."). Again, similar rates have been charged in other analogous cases. *Klebe v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, No. A-08-CA-091-AWA, 2010 U.S. Dist. LEXIS 37133, at *23 (W.D. Tex. Apr. 14, 2010) (approving $75 per hour paralegal rate in Title VII case). Therefore, in this Court's experience, a rate of $50 per hour is appropriate.

Like above, Wantou's cited authority is unpersuasive.  Initially, *Chacon* supports awarding less than $100 per hour for paralegals, as the court approved $85 per hour there.  *Chacon*, 2015 U.S. Dist. LEXIS 88354, at *18 (W.D. Tex. July 8, 2015).  And in *Gromer v. Mack*, No. 3:11-CV-0682-D, 2012 WL 28835, at *3 (N.D. Tex. Jan. 4, 2012), the Court conducted no analysis regarding the paralegals' rate, only noting it was uncontested.  So that case commands little authority.

Unlike Rine, however, Latimer neither billed excessive hours nor billed low-level legal work at partner rates.  In total, Latimer billed 314.2 hours during his 11 months representing Wantou.  Averaged out, that is about half-a-weeks' worth of work per month—certainly reasonable.  Indeed, more than 40 percent of those billed hours were charged at paralegal rates—making the number of hours all the more reasonable.  Based on a review of the billing records and the Court's experience, Latimer did not bill Wantou for excessive work.  That said, Walmart's request to reduce Latimer's hours by five percent is well made, at least in part.  Some of the paralegal tasks were clerical, *see, e.g.*, Docket No 653 at 9 ("Paralegal scanned documents per exam categories."), so a five percent reduction in paralegal hours is appropriate.

The *Johnson* factors do not support adjusting the lodestar calculation.  *Johnson*, 488 F.2d at 717–19.  "Four of the *Johnson* factors—(2) the novelty and complexity of the issues, (3) the special skill and experience of counsel, (9) the quality of representation, and (8) the results obtained from the litigation—are presumably fully reflected in the lodestar amount."  *Shipes*, 987 F.2d at 320.  And nothing rebuts that presumption here; indeed, the issues involved, the quality of representation and the results obtained were all considered above.  Walmart points to Wantou's limited success at trial, but Latimer represented long before trial and was reasonably successful. *See, e.g.*, Docket Nos. 60, 63 (denying, in part, Walmart's Motion to Dismiss, which Latimer opposed on Wantou's behalf).  Likewise, four additional factors are subsumed in the lodestar: (1)

the time and labor required (through the hours billed), (4) the loss of other employment (again, through the hours billed), (5) the customary fee (through reviewing rates in comparable cases) and (12) awards in similar cases.  Finally, the remaining factors do not justify departure from the lodestar amount.  Factor (6) may not be used to enhance fees, so it is inapplicable.  *Walker*, 99 F.3d at 772.  Factor (7) is neutral because Latimer represented Wantou during discovery.  To be sure, Factor (10) would support a slight enhancement because Wantou sued to protect his civil rights—making the case somewhat undesirable.  But that factor does not justify an enhancement.  This case is not exceptional.  *Watkins*, 7 F.3d at 457.

Wantou is also entitled to recover Latimer's out-of-pocket expenses.  Walmart does not contest the reasonableness of Latimer's expenses, and after a close review, the Court finds those expenses reasonable.

Therefore, Wantou's request for Latimer's fees is **DENIED-IN-PART** and **GRANTED-IN-PART**.  He shall be awarded $53,019.74 calculated as follows:

| CATEGORY | RATE (PER HOUR) | HOURS | DOLLARS |
| --- | --- | --- | --- |
| Full Rate | $250 | 181.50 | $45,375 |
| Paralegal Rate | $50 | 126.07 | $6,303.50 |
| Clerical | $0 | 6.64 (5% of paralegal hours) | $0 |
| Expenses | -- | -- | $1,341.24 |
| Total | -- | 314.20 | $53,019.74 |

IV.   <u>Conclusion</u>

For the foregoing reasons, it is **ORDERED** that Wantou is awarded pre-judgment interest on his backpay award at 5 percent per year, post-judgment interest at 0.62 percent per year, $71.50 for his hotel stay and attorneys' fees in the amount of $121,366.54.

**So ORDERED and SIGNED this 6th day of July, 2020.**

*Robert W Schroeder III*
ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE